# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANGEL DIAZ,<br><br>Defendant. | Case No. 3:18-cr-00057-MMD-CSD-4<br><br>**ORDER RE: MEMORANDUM REGARDING LACK OF STATUTORY AUTHORITY FOR DETENTION**<br><br>[ECF No. 992] |

On May 5, 2025, a petition for warrant for offender under supervision and subsequent arrest warrant was issued for Defendant Angel Diaz ("Diaz"). (ECF No. 988, 989, 990.) On May 15, 2025, Diaz appeared before the Court for his initial appearance regarding revocation of his supervised released. (ECF No. 993.) Prior to the hearing, Diaz's counsel filed a memorandum asserting the lack of statutory authority for the Court to detain Diaz. (ECF No. 992.) Diaz argues that because "no statute authorizes courts to detain individuals facing revocation hearings," detention is prohibited by the Non-Detention Act, 18 U.S.C. § 4001(a). (*Id.* at 1.) The Court ordered expedited briefing on the issue and continued the detention hearing to May 22, 2025. (ECF No. 993.)

The Government responded to the memorandum, (ECF No. 1001), and Diaz replied. (ECF No. 1003). The continued detention hearing was held on May 22, 2025. (ECF No. 1004.) For the reasons stated below and at the detention hearing, the Court concludes it has the statutory authority to detain Diaz pending his final supervised release revocation hearing pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. § 3143(a). The Court orders that Diaz be remanded to custody pending his supervised release revocation hearing before the District Court Judge.

///

///

///

## I. BACKGROUND

On October 21, 2019, Diaz pled guilty to one count of Conspiracy to Possess with Intent to Distribute Methamphetamine. (ECF Nos. 594, 603.) On August 10, 2020, Diaz was sentenced to sixty months custody, followed by a three-year term of supervised release. (ECF Nos. 829, 832.) On October 22, 2024, supervision commenced in the District of Nevada. (ECF No. 989 at 5.)

On April 1, 2025, Diaz's probation officer filed a petition for revocation of Diaz's supervised release and requested that the District Court issue a warrant for Diaz's arrest. The following day. (ECF No. 968.) The following day, the District Court granted the petition, issued the arrest warrant, and Diaz was promptly arrested. (ECF Nos. 969, 970.) On April 3, 2025, Diaz appeared for an initial appearance regarding the revocation of his supervised release. (ECF No. 972.) Diaz was released on his current supervised release conditions pending the outcome of his revocation hearing. (*Id.*) On April 21, 2025, supervised release was revoked by the Court, and Diaz was sentenced to time served, followed by thirty months supervised release with the following additional special conditions: location monitoring (home detention) for 180 days and no gang affiliation. (ECF Nos. 982, 986.)

On May 5, 2025, Diaz's probation officer filed a new petition for revocation of Diaz's supervised release alleging that Diaz had cut off his ankle monitor violating the terms of the home detention condition and then failed to respond or report to probation for several days. (ECF No. 988.) Later that day, the District Court granted the petition and issued an arrest warrant for Diaz. (ECF Nos. 989, 990.)

Following Diaz's arrest, on May 15, 2025, the Court held Diaz's initial appearance regarding Diaz's revocation of supervised released. (ECF No. 993.) Prior to the hearing, Diaz's counsel filed a memorandum asserting that the Court lacked statutory authority to detain Diaz pending the outcome of his final revocation hearing before the district court judge. (ECF No. 992.) At the hearing, the Court acknowledged receipt of the memorandum but stated it would not consider the argument without a response from the Government. (ECF No. 993.) The Court then ordered expedited briefing on the memorandum, continued

the detention hearing to May 22, 2025, and remanded Diaz to custody pending the detention hearing. (*Id.*)

On May 20, 2025, the Government filed its response to the memorandum. (ECF No. 1001.) On May 22, 2025, Diaz filed his reply. (ECF No. 1003.) Diaz's continued initial appearance was held on May 22, 2025, at 11:00 am. (ECF No. 1004.)

## II.   DISCUSSION

### A.   The Court's Authority to Detain Diaz Pending His Final Revocation Hearing Pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. § 3143(a).

Before the Court is a threshold issue of whether it has the authority to detain Diaz pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. § 3143(a) pending his supervised release revocation hearing before the district court judge in this matter. In advance of his detention hearing, Diaz submitted a memorandum, arguing that the Court lacks statutory authority to detain Diaz pending his revocation of supervised release hearing. (ECF No. 992.) Diaz contends "no statute authorizes courts to detain individual facing final revocation hearings." (*Id.* at 1.)

Invoking the Non-Detention Act, and its interpretation by a District Court Judge in *United States v. Mercado*, (D. Conn. Jan. 24, 2025), and a Magistrate Judge in *United States v. Wade*, (W.D.N.Y. Mar. 12, 2025), Diaz argues that neither 18 U.S.C. § 3143(a) ("Detention of a Defendant Pending Sentence"), § 3583(e)(3) ("Revocation" of Supervised Release), nor § 401 (General Contempt "Power of Court") qualify as Acts of Congress authorizing his detention at this stage of the proceedings. (ECF No. 992.) Diaz's reasoning that § 3143(a) does not authorize his detention is premised on his belief that this section only applies to individuals "who have been found guilty" and "are awaiting imposition or execution of sentence." (*Id.* at 3.) He argues that because he has neither been found guilty of a supervised release offense nor is he awaiting a sentence related to the alleged violations, § 3143(a) cannot apply. (*Id.* at 3-4.) He further argues that even if the Court construes § 3143(a) as referencing his original judgment, for which he is on supervision, then the statute would not apply because he is not awaiting the execution of his original

sentence. (*Id.*)

In response, the Government argues that "when a district court finds probable cause to believe that a defendant on supervised release has violated a condition of his supervision, the presumption is that he will be detained pending a revocation hearing." (ECF No. 1000 at 1.) The Government notes that the *Mercado* decision is not binding, has not been reviewed, and its progeny have been rejected. (*Id.* at 2.) The Government directs the Court to *United States v. Loya*, 23 F.3d 1529, 1531 (9th Cir. 1994), which they argue has "squarely" answered the issue before the Court and "controls." (*Id.* at 8-10.) According to the Government, ruling for Diaz would be a "disregard of settled law" and would go against clear precedent by the Ninth Circuit and its district courts and the Federal Rules of Criminal Procedure, to which the Court is bound by. (*Id.* at 4-6.)

In reply, Diaz argues that long-settled practice does not justify the Court to have authority to detain him pending revocation proceedings. (ECF No. 1003 at 2.) Diaz also argues that *Loya* does not apply because the Court was not posed with the same questions posed in *Mercado* and by Diaz here. (*Id.* at 2-4.) Diaz contends that because the "Non-Detention Act specifically requires an act of Congress to justify detention," "reliance on Rule 32.1" does not justify authority to detain Diaz. (*Id.* at 5, 6.)

### 1. The *Mercado* Decision.

A series of recent decisions from District Courts in Connecticut, Western District of New York, Eastern District of New York, Delaware, and the Northern District of North Carolina have addressed this issue. In *Mercado*, the case relied on by Diaz, the Court held that the Non-Detention Act prohibits the detention of citizens absent explicit congressional authorization. 2025 WL 297429, at *1-*6. The court specifically rejected the government's claim that § 3143(a) served as the necessary "Act of Congress" for detaining an individual after a violation of supervised release. *Id. Mercado* noted that for § 3143(a) to grant the requisite authority under the Non-Detention Act, Congress would need to amend it to permit detention pending a supervised release revocation hearing. *Id.* at *6. *Mercado* further explained that Rule 32.1 does not correct the deficiency in § 3143(a) because the

1  Federal Rules cannot "abridge, enlarge or modify any substantive right." *Id.* (quoting 28
2  U.S.C. § 2072(b)).

3  Following *Mercado*, some Courts adopted its reasoning. *See United States v.*
4  *Wade*, No. 1:09-CR-260-WMS-JJM, 2025 WL 786383, at *4 (W.D.N.Y. Mar. 12, 2025)
5  (concluding that the Court lacks the statutory authority to detain defendant pending his
6  revocation hearing); *United States v. Taylor*, No. 1:11-CR-290-RJA-HKS, 2025 WL
7  914064, at *1 (W.D.N.Y. Mar. 26, 2025) (same holding), *decision and order overruled*,
8  2025 WL 1076826 (W.D.N.Y. Apr. 10, 2025); *United States v. Clark*, No. 1:17-CR-0043-
9  LJV-HKS, 2025 WL 875458, at *3 (W.D.N.Y. Mar. 21, 2025) (same holding), *revoked by*
10 No. 17-CR-43-LJV-JJM, 2025 WL 1135075 (W.D.N.Y. Apr. 17, 2025). Importantly, each
11 of these decisions adopting *Mercado* "were either explicitly or implicitly overturned" by a
12 District Judge. *United States v. Thompson*, No. CR 19-20-CFC, 2025 WL 1114740, at *2
13 (D. Del. Apr. 15, 2025) (citing *Taylor*, 2025 WL 1076826).

14  Based on this Court's research, it also appears that all other courts to have
15 considered this issue have rejected *Mercado*'s reasoning. *See United States v. Taylor*,
16 No. 11-CR-290-A, 2025 WL 1076826, at *7 (W.D.N.Y. Apr. 10, 2025) ("rejecting" the
17 magistrate judge's "restrictive reading of § 3143(a)(1)" and "effort[s]t to marginalize the
18 import of Rule 32.1"); *United States v. Ceasar*, No. 17-CR-48, 2025 WL 974547, at *14
19 (E.D.N.Y. Apr. 1, 2025) ("[T]he Court respectfully is not persuaded by the opinion of the
20 District Court of Connecticut in *Mercado*. Finding § 3143 does not authorize detaining
21 supervisees charged with a [violation of supervised released] is inconsistent with Rule
22 32.1, § 3143, and § 3142(d)(1)(A)(ii) . . . and is contrary to Second Circuit case law.");
23 *United States v. Richardson*, No. 5:20-CR-00158-BO, 2025 WL 998884, at *3 (E.D.N.C.
24 Mar. 11, 2025) ("[T]he court declines to adopt *Mercado*'s reasoning. Instead, it concludes
25 that the best interpretation of the text of Rule 32.1(a)(6) and 18 U.S.C. § 3143(a)(1)
26 requires courts to apply that statute's standard to determine whether a person arrested for
27 a supervised release violation should be released pending their revocation hearing.");
28 *United States v. Malta*, No. 6:09-cr-06018-MAV, ECF No 43, at *6 (W.D.N.Y Feb. 2, 2025)

("[T]his Court respectfully disagrees with the conclusions of the *Mercado* court."); *United States v. Thompson*, No. CR 19-20-CFC, 2025 WL 1114740, at *2 (D. Del. Apr. 15, 2025) (same holding).

The Second Circuit in recent days has noted that magistrate judges have the authority to detain defendants pending their final revocation hearings:

> Federal Rule of Criminal Procedure 32.1(a)(6) provides with respect to an 'initial appearance' in a proceeding revoking or modifying probation or supervised release, that a 'magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings.'

*United States v. Romell Nellis*, No. 23-6295-CR, 2025 WL 1403404, at *1 n.1 (2d Cir. May 15, 2025); *see also United States v. Grady*, 818 F. App'x 86, 88 (2d Cir. 2020) ("If the defendant has been arrested and is being held in custody for the violations, . . . the judge 'may release or detain the person under 18 U.S.C. § 3143(a)(1).'" (quoting Fed. R. Crim. P. 32.1(a)(6)). This Court agrees and finds that *Mercado* is not persuasive and respectfully disagrees with its holding.

**2.   The Court has the Authority pursuant to Fed. R. Crim. P. 32.1, 46(d), and 18 U.S.C. § 3143(a) to Detain Diaz Pending His Supervised Release Revocation Hearing.**

Remarkably absent from Diaz's memorandum are the relevant cases from the Ninth Circuit that have likewise refused to follow the *Mercado* decision. Specifically, both the District of Montana and the Western District of Washington have been posed the question from *Mercado* in recent months. *See United States v. DeShaw*, No. 2:21-cr-00030-DLC, 2025 WL 1024315, at *1 (D. Mont. Apr. 7, 2025) (Whether "the Court lacks authority to detain Mr. DeShaw under the law, as such detention is prohibited by the Non-Detention Act?"); *United States v. Phillips*, No. 2:21-cr-00030-JLR, 2025 WL 484706, at *1 (W.D. Wash. Feb. 13, 2025) ("[W]hether it has authority to detain Phillips pursuant to Fed. R. Crim. P. 32.1 pending his evidentiary hearing on the allegations that he violated the terms of his supervision."). Both courts concluded they have the authority to detain defendants pending the outcome of their revocation hearings after declining to follow *Mercado* and its holding. *See DeShaw*, 2025 WL 1024315, at *4 ("[T]here is statutory authority to detain

1  Mr. DeShaw pending the outcome of his final revocation hearing."); *Philips*, 2025 WL
2  484706, at * 4 ("[T]he Court concludes that the Non-Detention Act does not preclude Mr.
3  Phillips's detention pending his revocation hearing."). Both *DeShaw* and *Philips* rely on
4  *United States v. Loya*, which this Court finds to be informative on this issue.

5        Fed. R. Crim. P. 46(d) states: "Pending Hearing on a Violation of Probation or
6  Supervised Release. Rule 32.1(a)(6) governs release pending a hearing on a violation of
7  probation or supervised release." Fed. R. Crim. P. 32.1(a)(1) and (6), the rules pertaining
8  to "Revoking or Modifying Probation or Supervised Release," state:

9    (a) Initial Appearance.

10     (1) Person in Custody. A person held in custody for violating
11     probation or supervised release must be taken without unnecessary
    delay before a magistrate judge.
12

13     (6) Release or Detention. The magistrate judge may release or
    detain the person under 18 U.S.C. § 3143(a)(1) pending further
14     proceedings. The burden of establishing by clear and convincing
    evidence that the person will not flee or pose a danger to any other
15     person or to the community rests with the person.

16 The Advisory Notes to Rule 32(a) state that the "probationer may be released pursuant to
17 Rule 46(c) pending the revocation hearing." Both Rule 46(c) and 32(a)(6) point to 18
18 U.S.C. § 3143(a).

19       Pursuant to 18 U.S.C. § 3143(a)(1): "the judicial officer shall order that a person
20 who has been found guilty of an offense and who is awaiting imposition or execution of
21 sentence, . . . be detained, unless the judicial officer finds by clear and convincing
22 evidence that the person is not likely to flee or pose a danger to the safety of any other
23 person or the community if released."

24       While 18 U.S.C. § 3143(a)(1) on its face states "detention pending sentence," the
25 Supreme Court has made clear that supervised release is part the original sentence.
26 "[P]unishments for revocation of supervised release arise from and are 'treat[ed] . . . as
27 part of the penalty for the initial offense.'" *United States v. Haymond*, 588 U.S. 634, 635
28 (2019) (quoting *Johnson v. United States*, 529 U.S. 694, 700-01 (2000)); *see United States*

*v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995) ("By the plain language of the statute, supervised release, although imposed in addition to the period of incarceration, is 'a part of the sentence.'" (citing *United States v. Montenegro-Rogo*, 908 F.2d 425, 432 (9th Cir. 1990))). Thus, "a defendant before the court on an allegation of violating a condition of supervised release has in fact been found guilty of the underlying offense and is awaiting imposition of that portion of the sentence attributable to the violation." *DeShaw*, 2025 WL 1024315 at *1. Diaz's argument that "there is no rationale for equating Mr. Diaz with either an individual who is awaiting execution of his sentence or found to have violated the terms of his supervision," (ECF No. 1003 at 4), falls short when considering that the Supreme Court has stated on multiple occasions that supervised release and its revocation proceedings are part of the original punishment. *See Haymond*, 588 U.S. at 635; *Johnson*, 529 at 700-01.

Additionally, the Ninth Circuit in *United States v. Loya* provided the exact answer to the issue before the Court: "if a defendant moves for bail pending his or her revocation hearing, the district court *shall* determine the person's eligibility for release under the standards of release set forth in 18 U.S.C. § 3143." 23 F.3d at 1531 (emphasis added). In other words, the magistrate judge at an initial appearance regarding revocation of the defendant's supervised released must apply § 3143(a) as the basis to detain the defendant pending the determination of revocation and shifts the burden to the defendant to demonstrate by a clear and convincing standard that the defendant need not be detained.

For over three decades, the District of Nevada has followed suit. *See Matter of Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1215 (D. Nev. 1993) (concluding that 18 U.S.C. § 3143(a) is "applicable to any person in custody pending a revocation hearing for alleged violations of conditions of probation or supervised release pursuant to Rule 32.1(a)(1) of the Federal Rules of Criminal Procedure"); *see also United States v. Hoover*, No. 3:14-CR-00072-RCJ-CLB, 2020 WL 1549624, at *1 (D. Nev. Apr. 1, 2020), *aff'd*, No. 20-10139, 2020 WL 3979853 (9th Cir. May 22, 2020) ("Federal Rule of Criminal Procedure 32.1(a)(6) governs detention pending revocation of supervised release under 18 U.S.C. §

3143(a)."); *United States v. Kindell*, No. 3:23-CR-00039-ART-BNW, 2024 WL 841098, at *3 (D. Nev. Feb. 27, 2024).

The Ninth Circuit and its district courts have consistently followed the same rule outlined in *Loya*. *See, e.g.*, *Loya*, 23 F.3d at 1530-31 (the court determines eligibility for release pending further proceedings on supervised release violations under the standards set forth in § 3143); *United States v. Bohol*, 314 F. App'x 86 (9th Cir. 2009) (affirming District Court order detaining the defendant pending his "hearing regarding revocation of supervised release" and citing *Loya*); *United States v. McCurin*, 2020 WL 3866885, at *1 (9th Cir. May 11, 2020) (citing 18 U.S.C. § 3143(a) and Fed. R. Crim. P. 32.1(a)(6) for the proposition that "Section 3143(a)(1) governs detention pending a supervised release revocation hearing"); *see also United States* v. *Ishaq Ikharo*, No. 24-CR-00060-YGR-1, 2025 WL 1393214, at *1 (N.D. Cal. May 14, 2025) (ordering that the defendant "charged with six violations of his supervised release" be detained "pursuant to Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a)(1)"); *United States v. Machado-Gomez*, No. 4:25-CR-06005-MKD-2, 2025 WL 790940, at *1 (E.D. Wash. Mar. 12, 2025) (Fed. R. Crim. P. "'32.1(a)(6) governs release pending a hearing on a violation of probation or supervised release.'" (quoting Fed. R. Crim. P. 46(d)); *United States v. Richardson*, No. 2:17-CR-00044-KJM-1, 2022 WL 17094606, at *1 (E.D. Cal. Nov. 21, 2022) ("Under 18 U.S.C. § 3143(a)(1), the court must order any defendant who has been found guilty of an offense and who is awaiting imposition or execution of a sentence detained, unless the court finds by clear and convincing evidence, the person is not likely to flee or pose a danger to others" (internal quotation marks omitted)); *United States v. Casanova*, No. 10CR3985WQH, 2022 WL 898361, at *2 (S.D. Cal. Mar. 28, 2022) (same holding); *United States v. Pena-Torres*, No. 17-cr-01085-001-TUC-JAS, 2017 WL 11466632, at *2 (D. Ariz. Oct. 17, 2017) ("The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings [regarding supervised release violation]" (alteration in original)).

Diaz asserts that "long-standing practice of detention of pending revocation

proceedings does not justify continued misrepresentation of law" and argues that district court decisions are not binding. (ECF Nos. 992 at 6, 1003 at 2.) "[A] decision at the district court level generally constitutes persuasive authority that is not binding on the other judges at the district court level, but considerations of consistency and predictability militate in favor of adhering to well-settled law unless there is exceedingly persuasive justification for charting a new course." *Flynn v. Nevada*, 345 F.R.D. 338, 347-48 (D. Nev. 2024) (citing *Starbuck v. City & Cnty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) and *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455-56 (2015)). It is correct that the cases cited above are not binding but they are persuasive, particularly when they are overwhelming as to one side.

Furthermore, in his reply brief, Diaz argues the Federal Rules of Criminal Procedure result from "inaction" by Congress and do not trump the Non-Detention Act because Congress did not explicitly authorize detention pending determination of revocation of supervised release. (ECF No. 1003 at 6.) Yet, there is an abundance of case law stating that "the Federal Rules of Criminal Procedure, once effective, have the force and effect of law . . . ." *United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) (citing *United States v. Marion*, 404 U.S. 307, 319 (1971); *United States v. Prieto-Villa*, 910 F.2d 601, 609 (9th Cir. 1990) ("The Federal Rules of Criminal Procedure have the force and effect of law." (citing *Ochoa v. United States*, 167 F.2d 341, 345 (9th Cir.1948)). The Court agrees with the Government—the Federal Rules are not optional. "The Federal Rules are 'as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a Rule's] mandate than they do to disregard constitutional or statutory provisions.'" *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).

By applying the "'traditional tools of statutory construction' to interpret the federal rules," *United States v. Petri*, 731 F.3d 833, 839 (9th Cir.2013) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988)), the plain language and the common

understanding of Rule 32.1(a)(6) as known within the Ninth Circuit is that Rule 32.1(a) requires courts to apply the standard set out in 18 U.S.C. § 3143(a)(1) to determine whether a supervised releasee should be released or detained until their revocation hearing occurs. Diaz has not cited any binding Supreme Court or Ninth Circuit authority or Ninth Circuit district court decisions to the contrary. Perhaps Diaz's argument that the Non-Detention Act in this situation would apply if there were also no Federal Rules of Criminal Procedure regarding detention pending revocation of supervised release. (ECF No. 1003 at 6-7.) But that is not the case here. The Court will not ignore clear federal rules and guidance from the Ninth Circuit and sister District Courts simply because two recent out of circuit decisions in *Mercado* and *Wade* say so. The Court is bound by and has no reluctance in following Rules 32.1(a)(6) and 46(d) and 18 U.S.C. § 3143(a)(1) as authority to detain Diaz, should it be deemed necessary, particularly when nearly all law of this circuit and others explicitly say to do so.[1]

Finally, the Court wishes to emphasize an important point raised in several previously cited cases: holding for Diaz would nullify a substantial portion of the supervised release process and make it impossible for the court to determine whether a defendant would be eligible for release. When a defendant is arrested for a supervised release violation pursuant to 18 U.S.C. § 3606 (probable cause of supervised release violation),

---

[1] The Court's review of case law from other circuits shows that magistrate judges have the authority to detain defendants pending their revocation hearings. *See United States v. Wroblewski*, 816 F.3d 1021, 1024 (8th Cir. 2016) ("At the initial appearance, the district court may release or detain the defendant [accused of violating conditions of supervised release] under 18 U.S.C. § 3143(a)(1), a provision of the Bail Reform Act found in Chapter 207, pending further proceedings."); *United States v. Brigham*, 569 F.3d 220, 229 (5th Cir. 2009) ("Rule 32.1(a)(6) allows a magistrate judge to release or detain a person subject to a revocation proceeding pursuant to provisions of the Bail Reform Act, 18 U.S.C. § 3141, et seq."); *United States v. Goode*, 487 F. App'x. 813, 813 (4th Cir. 2012) (affirming the district court's order detaining the defendant pending their revocation hearing); *United States v. Parrish*, No. 24-2069, 2025 WL 572384, at *1 (3d Cir. Feb. 21, 2025) (same); *United States v. Ruiz-Morales*, No. 20-1546, 2020 WL 7230764, at *1 (1st Cir. July 23, 2020) (affirming the "district court's denial of bail pending the final revocation hearing" pursuant to "Fed. R. Crim. P. 32.1(a)(6) and 18 U.S.C. § 3143(a)(1)").

the Court would have no mechanism to determine if there are conditions upon which the defendant could be released pending the outcome of the revocation proceedings. The defendant would simply be detained until the final revocation hearing, without the opportunity to argue for release. *See United States v. Torres-Santiago*, No. 21-1871, 2021 WL 4151197, at *1 (1st Cir. Nov. 4, 2021) (vacating a district court order which denied the defendant "the opportunity to argue for bail" and directed the defendant "to be held without bail pending final revocation in the absence of a Rule 32.1(a)(6) hearing"). Rule 32.1 and 18 U.S.C. § 3143(a) provide the court with the authority to detain a defendant pending his supervised release revocation hearing and also for the defendant to argue for his release pending the supervised release revocation hearing. And of course, ruling in line with *Mercado* goes against Ninth Circuit precedent, guidance available from Ninth Circuit district courts, and clear direction from the Federal Rules of Criminal Procedure. The Court refuses to do so here.

In sum, the Court explicitly finds that it has the statutory authority to detain Diaz pending his final revocation hearing pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. § 3143(a).

**B.    Court Authority to Detain Diaz Pending His Final Revocation Hearing Beyond 18 U.S.C. § 3143(a).**

Even if the Court were to find it lacks authority to detain Diaz pursuant to 18 U.S.C. § 3143(a), which it does not, the Court also has reservations as to whether the Non-Detention Act even may be properly applied in this situation due to 18 U.S.C. § 401 and district court original jurisdiction over criminal matters.

The Court's authority to detain Diaz is further reinforced by 18 U.S.C. § 401, which provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as -
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;

      (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

"Under 18 U.S.C. § 401(3), the district court had the power to treat Cantu's supervised release violation as a contempt of court . . . ." *United States v. Cantu*, 112 F.3d 517 (9th Cir. 1997); *see also Soto-Olivas*, 44 F.3d at 792 ("supervised release revocation hearings are [] akin to summary contempt"). "[A] person who violates a condition of his or her release is subject to a criminal prosecution for contempt under 18 U.S.C. § 401 . . . ." *United States v. Wing*, 682 F.3d 861, 873 (9th Cir. 2012). Diaz is accused of disobeying courts orders pertaining to his supervised release, specifically the special conditions of supervised released that were imposed on April 21, 2025. (ECF No. 990.) On the face of the April 21, 2025 Judgment on Revocation of Supervised Release, Diaz was "ordered" to "comply" with the new conditions imposed by the District Court Judge. (ECF No. 986.) Diaz's alleged actions of violating that Judgment can be properly considered as contempt, specifically under the third category of § 401. *See Philips*, 2025 WL 484706, at *4-5; *DeShaw*, 2025 WL 1024315, at *2.

  Furthermore, the District Court retains original jurisdiction over Diaz's criminal case. 18 U.S.C. § 3231. The Supreme Court has long held that "punishments for revocation of supervised release arise from and are 'treat[ed] . . . as part of the penalty for the initial offense.'" *Haymond*, 588 U.S. at 635 (quoting *Johnson*, 529 U.S. at 700-01); *see also United States v. Oliver*, 41 F.4th 1093, 1102 (9th Cir. 2022) ("[A] sentence for a supervised release violation is generally part of the penalty for the original offense"). "Under 18 U.S.C. § 3583(e)(3), . . . a district judge who finds that a defendant has violated the conditions of his supervised release normally may (but is not required to) impose a new prison term up to the maximum period of supervised release authorized by statute for the defendant's original crime of conviction, subject to certain limits." *Haymond*, 588 U.S. at 638. And "[f]rom the beginning of the Republic, federal judges, [have been] entrusted with wide sentencing discretion." *Concepcion v. United States*, 597 U.S. 481, 490 (2022) (quotation and citation omitted).

In this Court's view, the broad sentencing discretion and the authority to impose necessary sanctions for supervised release violations that Congress has entrusted to federal judges demonstrates that Congress likely never even intend that the Non-Detention Act interfere with or restrict this Court's inherent authority to detain the defendant pending the determination of the sanction for violating a lawful conditions that was imposed as part of a criminal sentence. *See Gregory v. State of Montana*, 118 F.4th 1069, 1077 (9th Cir. 2024) (Courts "'do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power." (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)). Both § 401 and the Court's original jurisdiction over Diaz's supervised release override any argument raise by Diaz pertaining to the Non-Detention Act. *See Phillips*, 2025 WL 484706, at *3 ("Because the Non-Detention Act does not indicate any Congressional intent to restrict the courts' inherent powers, the courts' ability to enforce orders through detention remain intact.")

Accordingly, the Court finds it also has authority to detain Diaz pending his final revocation hearing pursuant to 18 U.S.C § 401 and the Court's original jurisdiction over his criminal conviction and the resulting supervised release.[2]

### C.    Diaz is Detained Pending his Final Revocation Hearing.

Finally, the Court must determine whether Diaz should be detained pending his supervised release revocation hearing. As stated above, the Court looks to Fed. R. Crim. P. 32.1(a)(1)(6) and 46(d) and applies 18 U.S.C. § 3143(a)(1) in making this determination. Under that statute, such a defendant shall be detained unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." 18 U.S.C. § 3143(a)(1). If the judicial officer makes such a finding, the defendant shall be released pursuant to 18

---

[2]  Diaz also argues that the Court lacks authority to detain him under 18 U.S.C. § 3583(e)(3). Because the Court concludes it has the authority to detain Diaz pursuant to Fed. R. Crim. P. 32.1 and 18 U.S.C. § 3143(a), as well as under 18 U.S.C. § 401, the Court does not issue an opinion regarding § 3583(e)(3).

U.S.C. § 3142(b) or (c). *Id.* The burden of clear and convincing evidence lies with the defendant. Fed. R. Crim. P. 32.1(a)(6); *see Loya*, 23 F.3d 1530. "The rationale behind imposing a more stringent standard for persons on supervised released is that a revocation proceeding is not a new criminal prosecution but part of the defendant's punishment for the underlying case." *United States v. Hoover*, No. 3:14-cr-00072-RCJ-CLB, 2020 WL 1549624, at *1 (D. Nev. Apr. 1, 2020), *aff'd*, No. 20-10139, 2020 WL 3979853 (9th Cir. May 22, 2020) (citing *United States v. Hulen*, 879 F.3d 1015, 1020 (9th Cir. 2018)).

On May 22, 2025, the Court held the detention hearing in this case. (ECF No. 1004.) The Court heard argument from both the Government and Diaz. However, after considering these arguments and the petition for revocation, the Court finds that Diaz failed to meet his burden in this case to show by clear and convincing evidence that he does not pose a risk of nonappearance or a risk of danger to the community. In reaching this conclusion, the Court finds that:

- Diaz has previously violated conditions of his supervised release. Diaz's previous violations were due to his failure to refrain from the unlawful use of controlled substance, associating with individuals known to engage in criminal activity, failure to meaningfully participate in substance abuse and mental health treatment, maintain employment, and answer truthfully to probation's questions.

- On April 21, 2025, Diaz was mandated by the Court to wear a GPS Bracelet for 180 days after his previous supervised release revocation hearing.

- Less than two weeks later, on May 2, 2025, probation received alerts stating that Diaz's bracelet was tampered with. Upon investigation, probation determined that Diaz had cut the bracelet himself and was non-responsive to several phone calls for at least nine days from probation as well as those from friends and family.

- Diaz has a criminal history span nearly a decade with convictions for substance-related offenses, domestic battery, battery, and harassment. In those instances, Diaz harmed and/or threatened to harm multiple individuals, including at least once with a firearm.

The Court is sympathetic to Diaz's statements regarding a panic attack he was suffering on May 2, 2025, and that he would be open to new mental health treatment plans. Moreover, the Court appreciates that Diaz maintained employment during the two-week span following tampering of his GPS bracelet and that he self-surrendered. However, considering that Diaz was a no-show to prior mental health treatment opportunities along with the fact that he has a prior history of violence, the Court is not convinced that new conditions between his initial appearance and his revocation hearings before the District Judge will change anything. Furthermore, the Court has concerns regarding Diaz's history of violence in light of the fact that the May 2, 2025 arose as a domestic dispute between Diaz and his girlfriend and that he has a history of not complying with conditions and not promptly reporting to probation.

Based on the foregoing and for the reasons stated during the hearing, the Court finds that Diaz has failed to establish by clear and convincing evidence that he does not pose a risk of nonappearance and he does not pose a danger to the community if released on pending the revocation hearing. *See* Fed. R. Crim. P. 32.1(a)(6); 46(d); 18 U.S.C. 3143(a). Accordingly, Diaz shall be detained pending his supervised release revocation hearing.

### III.   CONCLUSION

For the reasons stated above, the Court concludes there is statutory authority to detain Diaz pending his supervised release revocation hearing.

**IT IS THEREFORE ORDERED** that **ANGEL DIAZ** be **DETAINED** pending his supervised release revocation hearing.

**IT IS SO ORDERED.**

DATED: May 22, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**